AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California


FILED
FEB 0 2 2016
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Phone Model: Apple iPhone 5C model A1456
IMEI: 358539052954901

Case No. ███████

'16 MJ0308

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A (incorporated by reference herein)

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B (incorporated by reference herein)

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 952 and 960 | Importation of Controlled Substance(s) |

The application is based on these facts:
See Affidavit of Special Agent (incorporated by reference herein)

- ☐ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

HSI Special Agent Christopher Oswald
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 2/2/16

City and state: San Diego, CA

*Judge's signature*

The Honorable Bernard G. Skomal, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, CHRISTOPHER OSWALD, Special Agent, United States Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations ("HSI"), being duly sworn, state as follows:

## INTRODUCTION

1. I make this affidavit in support of an application for a search warrant in furtherance of a narcotics smuggling investigation conducted by the HSI for the following properties: one Apple iPhone 5C cellular telephone, model A1456, IMEI: 358539052954901 (hereinafter "Subject Telephone").

2. Customs and Border Protection Officers ("CBPOs") seized the **Subject Telephone** from Paul Engelberto Essua CASTRO-Fuentes ("CASTRO") incident to his arrest for importation of methamphetamine on December 15, 2015. I submit that probable cause exists to believe that the Defendant used the **Subject Telephone** to communicate with co-conspirators during the drug smuggling event on December 15, 2015, and that the **Subject Telephone** contains evidence relating to violations of Title 21, United States Code, Sections 952, 960 and 963. The **Subject Telephone** is currently in the possession of HSI, 2255 Niels Bohr Court, San Diego, CA 92154.

3. Based upon my experience and training, and all the facts and opinions set forth in this Affidavit, I believe the following items will be found in the **Subject Telephone** to be searched:

    a. Telephone numbers and direct connect numbers or identities assigned to the device, including usernames and passwords and electronic mail addresses;
    b. Call and direct connect history information, including Internet Protocol addresses accessed by the device or accessing the device;
    c. Stored photographs, videos and text messages;
    d. Stored electronic mail, including attachments, and voice messages and other recordings;
    e. Web-browsing history and any stored web pages;
    f. Stored documents and other files;
    g. Stored geo-location information; and,
    h. Data stored in any application.

These items may be or lead to: (1) evidence of the existence of drug trafficking in violation of Title 21, United States Code Sections 952 and 960; (2) contraband, fruits of crime, or things otherwise criminally possessed; and (3) property designed or intended for use, or which is or has been used as a means of committing criminal offenses.

## EXPERIENCE AND TRAINING

4. I am a Special Agent (SA) of the United States Department of Homeland Security (DHS), U.S. Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), assigned to a narcotics investigations group. I have been employed by DHS since Jan 28th, 2010. I am a graduate of the Criminal Investigator Training Program (CITP) and the Immigration and Customs Enforcement Special Agent Training (ICE-SAT) program at the Federal Law Enforcement Training Center (FLETC) in Glynco, GA. I have received basic training in conducting narcotics smuggling investigations and the enforcement of numerous Immigration and Customs laws within the United States. My training has also included the use of cellular and digital telephones and other electronic devices used by narcotics smugglers in the normal course of their illicit activities.

5. Since becoming a HSI SA, I have been involved in numerous narcotics trafficking investigations involving the importation, distribution and sale of large quantities of controlled substances. I have also worked with other agents with extensive experience in narcotics smuggling investigations. Beginning in March 2015, I have been assigned to Operation Alliance at San Ysidro, California, and my assignment includes investigations related to the illegal importation and trafficking of narcotics. In the course of my duties, I have worked as the case agent, directing specific drug-related investigations; I have worked as a surveillance agent and observed and recorded movements of individuals trafficking in drugs and of those suspected of trafficking in drugs; I have initiated and executed numerous arrests for drug-related offenses, including possession with the intent to distribute and the importation of controlled substances; and, I have interviewed defendants, witnesses and informants relative to the illegal trafficking of controlled substances. Through my observations and these interviews, I have gained a working knowledge and insight into the normal operational habits of narcotics smugglers, with particular

2

emphasis on those who attempt to import narcotics into the United States from Mexico at the San Diego international ports of entry. Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones, pagers and portable radios to maintain communications with co-conspirators in order to further their criminal activities. Conspiracies involved in the smuggling and trafficking of narcotics generate many types of evidence including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel and payment, names, photographs, text messaging, and phone numbers of co-conspirators. For example, load drivers smuggling controlled substances across the border are typically in telephonic contact with co-conspirators immediately prior to and following the crossing of the load vehicle, at which time they receive instructions on how to cross and where and when to deliver the controlled substance.

7. In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of narcotics investigations, and the opinions stated below are shared by them. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit.

8. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in the affidavit, I submit the following:

    a. Drug smugglers will use cellular telephones and other electronic devices with internet access because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

    b. Drug smugglers believe that cellular telephones and other electronic devices with internet access provide greater insulation and protection against court-ordered wiretaps, and they believe in the inability of law enforcement personnel to simultaneously track the originating and destination telephone numbers of calls placed to and from their cellular telephones.

c. Drug smugglers will use cellular telephones and other electronic devices with internet access because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

d. Drug smugglers and their accomplices will use cellular telephones and other electronic devices with internet access because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

e. Drug smugglers will use cellular telephones and other electronic devices with internet access to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

f. Drug smugglers will use cellular telephones and other electronic devices with internet access to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of Border Patrol checkpoints.

## FACTS SUPPORTING PROBABLE CAUSE

9. On or about December 15, 2015, at approximately 7:45 p.m., CASTRO applied for admission into the United States from the Republic of Mexico via the vehicle lanes at the Otay Mesa, California, Port of Entry (POE). CASTRO was the driver, registered owner and sole occupant of the blue 2007 Toyota Yaris, bearing California license plates.

10. At this time, A Customs and Border Protection (CBPO) Canine Enforcement Officer and his assigned narcotic and human detection dog (NHDD) were conducting pre-primary roving operations when the NHDD alerted and responded to a trained odor emanating from the rear bumper of the vehicle. CBPO's contacted CASTRO and received two negative Customs declarations from him. CASTRO told officers that the Toyota Yaris he was driving belonged to him and that he lived in Tijuana, Mx and was traveling to Walmart in San Diego, CA. A CBPO then discovered a cellophane wrapped package inside the rear bumper while inspecting CASTRO's vehicle with an inspection mirror. CASTRO was then removed from the vehicle and escorted to the security office and his vehicle was driven to the secondary lot for further inspection.

4

11. In the secondary inspection lot, a CBPO conducted an inspection of the vehicle, which revealed packages concealed within the rear bumper and rear quarter panels of the vehicle. The CBPO subsequently removed a total of thirty four (34) packages from the vehicle weighing approximately 38.58 pounds (17.5kg). The CBPO probed a random package and extracted a clear crystalline substance that field tested positive for methamphetamine.

12. On December 16, 2015 at approximately 0700 hours, CBPOs conducted a re-inspection of CASTRO's 2007 Toyota Yaris. During the re-inspection, an additional package was discovered in the driver side rear quarter panel. The package, weighing .52 Kg, contained a crystalline substance which also field tested positive for the properties of methamphetamine. The adjusted weight of all packages removed totaled 35 packages/ 18.02 kilograms (39.73 pounds).

13. CBPOs seized the **Subject Telephone** from CASTRO at the time of his arrest. Homeland Security Investigations (HSI) Agents were unable to download any information from the **Subject Telephone** at the Port of Entry incident to the Defendant's arrest due to a cracked touch screen. During his post arrest interview, CASTRO provided Agents with the password to his phone.

14. Based upon my experience and investigation in this case, I believe that CASTRO, as well as other persons as yet unknown, were involved in an on-going conspiracy to import, possess, and distribute large quantities of methamphetamine. Based on my experience investigating narcotics smugglers, I also believe that CASTRO used the **Subject Telephone** to coordinate with co-conspirators regarding the importation and delivery of the controlled substances and to otherwise further this conspiracy both inside and outside the United States.

15. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics smuggling activities of CASTRO and his co-conspirators, such as telephone numbers, made and received calls, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **Subject Telephone**.

## METHODOLOGY

16. It is not possible to determine, merely by knowing the mobile electronic device's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Mobile electronic devices, including cellular telephones and tablets, can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers and installable software now allow for their subscribers and users to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many mobile electronic devices do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some mobile electronic device models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

17. Following the issuance of this warrant, I will collect the **Subject Telephone** and submit it to HSI's computer forensics group for analysis. All forensic analysis of the data contained within the mobile electronic devices and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

18. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and,

consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

19. Based on all of the facts and circumstances described above, I believe that probable cause exists to conclude that CASTRO used the **Subject Telephone** to facilitate the offenses of importation and conspiracy to import methamphetamine. The **Subject Telephone** was likely used to facilitate the offenses by transmitting and storing data, which constitutes evidence, fruits, and instrumentalities of violations of Title 21, United States Code, Sections 952, 960 and 963. I also believe that probable cause exists to believe that evidence, and fruits and instrumentalities of illegal activity committed by CASTRO may be contained on the **Subject Telephone**. I respectfully request a warrant be issued authorizing me, a HSI Special Agent, or another federal law enforcement agent specially trained in digital evidence recovery, to search the item described in Attachment A, and seize the items listed in Attachment B.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Christopher Oswald
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me this ____ day of February, 2016.

The Honorable Bernard G. Skomal
United States Magistrate Judge, Southern District of California

# ATTACHMENT A

## *Item to be Searched:*

One Apple iPhone 5C cellular telephone, model A1456, IMEI:358539052954901 (referred to as the **Subject Telephone**)

## *Location of Item:*

The **Subject Telephone** is currently in the possession of the United States Department of Homeland Security, 2255 Niels Bohr Ct., San Diego, CA, Seized Property Vault.

# ATTACHMENT B

The following evidence to be searched for and seized pertains to violations of Title 21, United States Code, Section(s) 952, 960, and 963:

1. Communications, records, or data including but not limited to emails, text messages, photographs, audio files, videos, or location data:

    a. tending to indicate efforts to smuggle or otherwise import or deliver controlled substances from Mexico to the United States;

    b. tending to identify other facilities, storage devices, or services-such as email addresses, IP addresses, phone numbers-that may contain electronic evidence tending to indicate efforts to smuggle or otherwise import or deliver controlled substances from Mexico to the United States;

    c. tending to identify co-conspirators, criminal associates, or others involved in smuggling or othelwise importing or delivering controlled substances from Mexico to the United States;

    d. tending to identify travel to or presence at locations involved in smuggling or otherwise importing or delivering of controlled substances from Mexico to the United States, such as stash houses, load houses, or delivery;

    e. tending to identify the user of, or persons with control over or access to, the subject phone; or

    f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data above.